IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  1:16-CR-00258 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | GOVERNMENT'S NOTICE OF AGENT'S |
| | ) | SUMMARIZED TESTIMONY |
| DELANTE LUNN, | ) | PURSUANT TO FEDERAL RULE OF |
| | ) | EVIDENCE 702 |
| Defendant. | ) | |
| | ) | |

The United States of America, by and through its attorneys, David A. Sierleja, Acting

United States Attorney, and Vasile C. Katsaros and Robert F. Corts, Assistant United States

Attorneys, hereby gives further notice pursuant to Federal Rule of Evidence 702 of its intent to

offer the opinion testimony of Elyria Police Department Detective Todd Straub, Detective Straub

would testify regarding narcotics trafficking, distribution amounts, the relationship between drug

dealers and users, drug jargon, and the use of electronic devices in drug trafficking.  Detective

Straub has previously testified as an expert in court in the area of narcotics and narcotics

trafficking.

1

By education, training, and experience, Detective Straub has specialized knowledge regarding the *modus operandi* of drug trafficking organizations and drug traffickers, including but not limited to the operations, structure, codes and language used by drug traffickers to facilitate their illegal conduct.  In addition, as a result of his participation in this investigation, Detective Straub is thoroughly familiar with the content and context of lawfully seized and reviewed texts and phone records that will be offered as evidence at trial.

Detective Straub's specialized knowledge of the practices and language of drug traffickers will assist the trier of fact in understanding the evidence and determining factual issues herein, and squarely falls within the ambit of Federal Rule of Evidence 702.  Detective Straub's qualifications, as well as an illustration of anticipated trial testimony regarding texts and phone records that the government may offer at trial is set out hereafter.  The substance of these communications and records were already provided to defense counsel months ago pursuant to the United States' discovery obligations.

Finally, since Detective Straub served as a case agent in this investigation, and in that capacity, supervised various investigative techniques, including forensic review of seized phones, and otherwise personally participated in the investigation, he also will testify as a fact witness.  Accordingly, the government will ask the court to instruct the jury on the "dual roles" of an "expert/opinion witness" and "fact" witness in this case.

### DETECTIVE STRAUB'S QUALIFICATIONS AND PROPOSED TESTIMONY

As courts have held time and again, Detective Straub's proposed testimony falls well within Rule 702.  The Sixth Circuit has held that "our court regularly allows qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate

cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman." *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004); *United States v. Thomas*, 74 F.3d 676, 681 (6th Cir. 1996) ("Courts have overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area, such as drug dealing, not within the experience of the average juror").  Qualified law enforcement personnel include local law enforcement with some familiarity with the drug trade. *See, e.g.*, *United States v. Bender*, 265 F.3d 464, 472 (6th Cir. 2001) (upholding admission as expert testimony on drug trafficking and manufacturing a local officer with 14 years of law enforcement experience, nine of which was in the narcotics/vice division); *Thomas*, 74 F.3d at 681 (police detective police detective who investigated the case was permitted to testify as both a fact and an expert witness relating to the investigation and drug trafficking); *United States v. Harris*, 192 F.3d 580 (6th Cir. 1999) (same).  This expert testimony helps jurors to understand "the significance of certain conduct or methods of operation unique to the drug distribution business." *United States v. Garcia*, 447 F.3d 1327, 1335-36 (11th Cir. 2006) ("[t]he operations of narcotics dealers are a proper subject for expert testimony under Rule 702") (quoting *United States v. Ginsberg*, 758 F.2d 823, 830 (2d Cir. 1985), and *United States v. Butler*, 102 F.3d 1191, 1199 (11th Cir. 1997)); *see also United States v. Estelan,* 156 Fed. Appx. 185 (11th Cir. 2005) (unpublished) ("The rule is well established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business," and an experienced officer's opinions are appropriately based upon specialized training, knowledge, and widely accepted investigative principles, even if the opinions are not subject to peer review or empirical testing).

3

As part of this testimony, "police officers are routinely allowed to testify that circumstances are consistent with distribution of drugs rather than personal use" as well as their knowledge of "drug prices," since such information "helped the jury to understand the evidence presented, and therefore was proper expert testimony." *Swafford* 385 F.3d at 1030; *United States v. Quinn*, 230 F.3d 862, 866 (6th Cir. 2000) (affirming defendant's sentence where officer testified that amount of drugs was more consistent with distribution than with personal use). This form of expert testimony also frequently involves presenting other valuable information relating to drug trafficking to the jury. *See, e.g.*, *Swafford* 385 F.3d at 1031 (upholding admission of law enforcement expert testimony relating to other "known drug dealers"); *United States v. Thomas*, 74 F.3d 676, 680-83 (6th Cir. 1996) (admitting expert testimony on drug dealers' record-keeping practices and use of electronic devices, such as pagers); *See also*; *United States v. Flowal*, 163 F.3d 956 (6th Cir. 1998) (admitting local officer's expert testimony on drug distribution practices); *United States v. Hubbard*, 61 F.3d 1261 (7th Cir. 1995) (affirming local law enforcement expert testimony on "use of hidden compartments in automobiles to transport narcotics"); U*nited States v. Spotted Elk*, 548 F.3d 641, 662-663 (8th Cir. 2008) (affirming local law enforcement expert testimony on the use of materials to mask the smell of narcotics); *United States v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007) (drug jargon is a "fit subject for expert testimony" by a police officer); *United States v. Isler*, 429 F.3d 19, 26-27 (1st Cir. 2005) (affirming police officer's opinion testimony regarding features of a drug house).

As stated in Rule 702, formal training or professional education is not a prerequisite to establishing a witness's expertise. "While extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates

the admission of testimony by experts whose knowledge is based on experience." *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005).  The issue is whether the witness's knowledge of a particular subject matter is such that his or her opinion will aid the jury in its understanding of the evidence.  *United States v. Avila*, 557 F.3d 809, 820 (7th Cir. 2009); S*potted Elk*, 548 F.3d at 662-663.  In the context of narcotics prosecutions, courts have qualified a variety of lay witnesses as experts, including police officers, informants, co-conspirators, and drug users. *United States v. Lopez*, 547 F.3d 364, 372-373 (2d Cir. 2008) (U.S. Attorney investigator qualified as expert in practices of drug dealers and users); *United States v. Mansoori*, 304 F.3d 635, 653-654 (7th Cir. 2002) (police officer is a proper expert witness on drug trafficking activity); *United States v. Navarro*, 90 F.3d 1245 (7th Cir. 1996) (DEA agent testified as expert concerning operations of drug dealers). "A court has wide discretion in determining the competency of a witness as an expert and the relevancy of his testimony with respect to a particular subject. The district court's decision will be overturned on appeal only if manifestly erroneous."  *United States v. Stevenson*, 6 F.3d 1262 (7th Cir. 1993).[1]

Furthermore, a *Daubert* hearing is unnecessary where, as here, the reliability of an expert's methods may properly be taken for granted. *Kumho Tire v. Carmichael*, 526 U.S. 137, 152 (1999) (because rules of evidence seek to avoid "unjustifiable expense and delay," trial judge has discretionary authority to avoid unnecessary "reliability" proceedings in ordinary cases

---

[1] An expert's opinion may be based upon facts or data actually seen or heard by the expert or communicated to him at or before the hearing. Fed. R. Evid. 703. Moreover, the facts and data need not be admissible themselves, if they are the type of information reasonably relied upon by experts in the particular field in forming opinions or inferences. *Id.* Thus, courts have permitted expert opinion testimony based upon hearsay and third party observations, *United States v. Steed*, 548 F.3d 961, 975 (11th Cir. 2008), *United States v. Lundy*, 809 F.2d 392, 395-96 (7th Cir. 1987).  Inadmissible information which has been relied upon by an expert is not, however, to be disclosed to the jury unless its probative value outweighs its prejudice.  *Id.*

5

and to require appropriate proceedings in less usual or more complex cases that present cause for questioning an expert's reliability). It is common for courts to admit law enforcement expert testimony without holding a *Daubert* hearing. *See, e.g.*, *United States v. Jawara*, 474 F.3d 565, 582-83 (9th Cir. 2007) (recognizing that district court's gatekeeping role does not require district court to hold a separate *Daubert* hearing); *United States v. Robertson*, 387 F.3d 702, 704 n.2 (8th Cir. 2004) (observing that district court not always required to hold *Daubert* hearing before qualifying an expert under Rule 702, allowing two police officers to testify about how drug traffickers operate); *United States v. Nichols*, 169 F.3d 1255, 1262-64 (10th Cir. 1999) (*Daubert* hearing unnecessary when proposed testimony does not involve new scientific theories or methodologies and opponent's arguments relate solely to the credibility of witnesses and weight to be accorded to evidence).

Detective Straub has been employed by the Elyria Police Department ("EPD") for 11 years and assigned as a Detective in the Narcotics Unit for 4 years. Detective Straub has participated in investigations involving the organized distribution of illegal drugs and has made a significant amount of arrests for drug-related offenses. His experience as a narcotics officer includes, but is not limited to: physical surveillance, acting in an undercover capacity in the purchase and sale (reverse) of illegal controlled substances, analyzing pen register and telephone toll data, interviewing witnesses, drafting and executing search warrants seeking seizure of illegal drugs and other evidence of drug violations, drafting and executing search warrants for telephones and other electronic items involved in the drug trafficking activities and reviewing data from the same, supervising the purchases of controlled substances by undercover agents and informants, debriefing persons arrested and convicted of drug trafficking offenses about their

illegal activity, and supervising law enforcement officials during drug investigations.  Through training and experience, Detective Straub knows that, quantities of opiates are typically sold in various amounts, including smaller amounts such as bags, grams, and ounces.  Detective Straub is also aware that these opiates sold on the street are oftentimes referred to in drug jargon as china, china white, fire, flame, etc.  Furthermore, through investigation and work on the streets, Detective Straub has become familiar with the types and amounts of prices charged for controlled substances, including opiates such as heroin and fentanyl, within the Northern District of Ohio, as well as profits made by drug dealers and the methods, language, and terms which are used to disguise their illegal activity.

Based upon Detective Straub's training and experience, he knows that persons engaged in drug trafficking require expedient forms of communication to maintain an adequate and consistent supply of drugs from sources, and to effectively market those drugs to customers.  Use of cellular telephones (both for phone calls and texting) are crucial to the success of drug traffickers.  Furthermore, Detective Straub is aware that payment for the drugs usually occurs at quickly arranged meetings, and telephonic contact is therefore important to coordinate and conduct the on-going illegal narcotics transactions.  Detective Straub is also aware that those involved in illegal drug operations almost always use slang or code when communicating about narcotics matters.

Detective Straub along with fellow law enforcement investigated Defendant's drug activities using various techniques, including physical surveillance, analyzing telephone toll data, interviewing witnesses, drafting and executing search warrants for telephones and other electronic items involved in the drug trafficking activities and reviewing data from the same,

supervising the purchases of controlled substances by undercover agents and informants, debriefing persons arrested and convicted of drug trafficking offenses about their illegal activity. As part of this investigation, Detective Straub obtained through consensual search and lawful warrants the phone logs and texts from both the Defendant's phone and the phone shared by the victim, and others.  Through the course of his investigation (including a review of the retrieved information from both phones) and based on his training and experience, Detective Straub was able to ascertain the drug trafficking activities of the Defendant and his previous supplier-consumer drug relationship with the victim.

Respectfully submitted,

DAVID A. SIERLEJA
ACTING UNITED STATES ATTORNEY

By:    /s/ Vasile C. Katsaros
Vasile C. Katsaros
Robert F. Corts
Assistant U.S. Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3876
(216) 522-8355 (facsimile)

8

CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2017, a copy of the foregoing document was filed

electronically.  Notice of this filing will be sent to all parties by email.

/s/ Vasile C. Katsaros
Vasile C. Katsaros
Assistant U.S. Attorney