IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 1:16-CR-258 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | GOVERNMENT'S MOTION TO |
| | ) | EXCLUDE THE DEFENDANT'S |
| DELANTE LUNN, | ) | EXPERT FROM TESTIFYING AS TO |
| | ) | CAUSE OF DEATH |
| Defendant. | ) | |
| | ) | |

    The United States of America, by and through its attorneys, David A. Sierleja, United States Attorney, and Vasile C. Katsaros and Robert F. Corts, Assistant United States Attorneys, and hereby respectfully requests that this Honorable Court exclude the Defendant's expert, Robert J. Belloto, Jr., from testifying as to victim's cause of death based on the following:

1

**A.     Defendant's Proposed Expert Testimony**

1.     Daubert Forbids Defendant's Proposed Expert Robert J. Belloto from Testifying About the Victim's Cause of Death

It is the United States' understanding that the Defendant plans to offer Robert J. Belloto, Jr. as an expert witness. Belloto has a Ph.D. and Masters in Pharmacy from Ohio State University, a Masters in Mathematics from the University of Toledo, and a Bachelors degree from Ohio State University. He is not a medical doctor and has no medical training. Belloto has never testified in court as to cause of death and the government has not found one instance where a court has qualified a pharmacist to opine as to cause of death. Based on Belloto's report, it appears that defense counsel plans to have Belloto offer his opinion on two subjects: (1) the victim's cause of death, and (2) the postmortem concentration of fentanyl and heroin in the victim's system. (See Gov. Ex. 1: Belloto Report). In the report, Belloto opines that the victim died from a mixed drug overdose as it is not possible to tell in what proportion the different drugs were responsible for her death. He further states that the analysis is complicated by the elevation in levels upon death and even knowing if the drugs were taken at the same time.

Based on its present understanding of Belloto's education and background, the United States does not object to him offering testimony about the postmortem concentration of fentanyl and heroin found in the victim's system. The United States does object to Belloto – who has no medical training and has never provided anyone with professional medical care – opining on the cause of death and moves to exclude him from making any such testimony under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993).

Rule 702, which incorporates the Supreme Court's *Daubert* holding, establishes the criteria for a witness to testify as an expert:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; see also *United States v. Stafford*, 721 F.3d 380, 393 (6th Cir. 2013) ("[d]istrict courts have broad latitude in deciding whether to admit expert testimony under *Daubert*" and "such decisions are similarly reviewed under the abuse-of-discretion standard").

Rule 702 gives the district courts the role of gatekeeper and charges the court with ensuring that only expert testimony that "rests on a reliable foundation and is relevant to the task at hand" is admitted. *United States v. Langan*, 263 F.3d 613, 620 (6th Cir. 2001) (quoting *Daubert*, 509 U.S. at 597). The Sixth Circuit has noted that trial courts have a "special obligation [. . .] to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *United States v. Harris*, 192 F.3d 580, 588 (6th Cir. 1999) (internal quotation and citation omitted). See also *Kumho Tire Co., v. Carmichael*, 526 U.S. 137 (1999) (extending *Daubert's* reliability and relevance standards to non-scientific experts.); see, e.g., *Pride v. BIC Corp.*, 218 F.3d 566 (6th Cir. 2000) (affirming district court's exclusion of expert whose methodologies were too unreliable under abuse of discretion standard); *Pluck v. BP Oil*

3

*Pipeline Co.*, 640 F.3d 671 (6th Cir. 2011) (affirming district court's exclusion of expert when court could not verify reliability of expert's methodology).

Belloto, who is a pharmacist, lacks the "knowledge, skill, experience, training, or education" that would allow him to testify about the victim's cause of death. Fed. R. Evid. 702(a). Courts routinely exclude proposed expert testimony as to cause of death when the expert lacks the necessary "knowledge, skill, experience, training, or education" to make that finding. Id. In the *United States v. Robert Johnson*, Case No. 1:16CR96, Judge Gaughan faced the same issue presented in this case, whether Robert J. Belloto could testify as to cause of death in a fentanyl overdose case? Judge Gaughan ruled in that matter that Belloto could testify about concentrations of fentanyl, including the half-life of fentanyl and the timing of ingestion, but he may not testify as to what caused the victim's death. (Docket #44, Order). In *United States v. Zolot*, a court excluded a forensic toxicologist from opining that cardiovascular disease was a potential cause of death in an opioid death case. 968 F. Supp. 2d 411, 426-27 (D. Mass. 2013). The forensic toxicologist was attempting to draw this conclusion based on the medical records and medical examiner report. Despite the fact that the forensic toxicologist had worked for over 20 years in the state's medical examiner office, including as chief toxicologist, the court held that the forensic toxicologist "cannot simply repeat a medical examiner's opinion as the only basis for his own opinion that there was another medical cause of death, unless he has the expertise to independently reach that conclusion. There is no evidence that [the forensic toxicologist] is an expert in cardiovascular disease." Id. at 427. Furthermore, the court held that the forensic toxicologist cannot simply rely on the medical examiner report unless he has the medical expertise to reach the cause of death conclusion on his own. Id. at 426 ("[a] scientist, however

4

well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science") (quoting *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,* 285 F.3d 609, 614 (7th Cir. 2002)).

In this case, Belloto is a pharmacist with no known expertise, training, or experience in forensics, let alone the medical expertise needed to opine on as to cause of death. His curriculum vitae states that his full-time job for the past 11 years is a staff pharmacist at "Good Samaritan Hospital," where he "prepare[s] and check[s] orders, drug charts, intravenous admixtures and chemotherapy," among other non-forensic tasks. (Gov. Ex. 2: Belloto CV). The only experience in forensics listed is "providing toxicology consultations concerning drug effects, opinion letters, and testimony in court and administrative hearings" as part of his part-time work as a litigation consultant. (Id.) (emphasis added). And even then, he is only opining on the effects of the drug, not a cause of death. Thus, as far as the documents Defendant provided show, this would be the first instance where Belloto would make any determination as to cause of death. Even more so than the forensic toxicologist in *Zolot*, Belloto lacks the "knowledge, skill, experience, training, or education" needed for him to testify about the victim's cause of death.

Belloto also fails the remaining three prongs of Federal Rule of Evidence 702. His proposed testimony is not "based on sufficient facts or data." Fed R. Evid. 702(b). Belloto's report failed to even take into consideration the investigative reports and lab reports. In those reports, investigators found an open baggy right next to the victim which contained a mixture of 6-monoacetylmorphine, diacetylmorphine, and fentanyl. (Gov. Ex. 3: Lorain County lab report). His report states that the victim could have taken four drugs (fentanyl, morphine, monoacetylmorphine, and alprazolam) individually and that it is not possible to tell in which

5

order the drugs were taken. (Gov. Ex. 1: Belloto Report, p. 2-3). Therefore, according to Belloto, it is impossible to say which drug led to the victim's death (Gov. Ex. 1: Belloto Report, p. 2). It is clearly evident that Belloto's report failed to even take into account what was found at the scene making his conclusions incomplete at best. Again, Belloto's opinion that the victim individually took fentanyl, morphine, 6-monoacdetylmorphine and alprazolam and that it is impossible to tell in which order the drugs were taken is completely belied by the evidence in this case. (Gov. Ex. 1: Belloto Report, p. 2-3).

Government experts will testify that the reason the victim's blood contained both morphine and 6-monoacetylmorphine is that the drugs found next to the victim breakdown into these drugs once they are ingested into the body. Since Belloto's report failed to even consider any information found at the scene, including the drugs found next to the victim, his opinion is not based on fact as his testimony is neither the "product of reliable principles and methods" (Fed R. Evid. 702(c)) nor "reliably applied the principles and methods to the facts of the case." Fed R. Evid. 702(d). In fact, it is hard to determine Belloto's methodology from the report as it relates to cause of death. His conclusions were made bereft of any apparent methodology or analysis. Instead, he pulled out pieces of information from the reports and drew a conclusion that the death was a mixed drug overdose and that is impossible to tell which drugs were responsible for the victim's death. "A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science." *Dura Auto. Sys. of Ind. v. CTS Corp., Inc.*, 285 F.3d at 614. Just as was the case in *Zolot*, Belloto cannot rely on the coroner's report to determine the cause of death unless he has the medical expertise to reach the cause of death conclusion on his own.

The coroner's verdict in this case determined that Shanee Dowler died due to a mixed drug overdose including heroin, fentanyl, and benzodiazepines. (Gov. Ex. 4: Lorain County Coroner's Verdict).  The government is prepared to call Doctor Frank Miller, a forensic pathologist, and Doctor Stephen B. Evans, a medical doctor, to testify as to cause of death.  Dr. Miller was at the scene of the overdose and has reviewed the lab reports from the drugs taken at the scene, the toxicology report, police reports, and the victim's body.  Both doctors will testify that but for the ingestion of the heroin and fentanyl mixture found at the scene, the victim would still be alive.  The government also is prepared to call Kevin Shanks, a forensic toxicologist, whose lab analyzed the femoral blood taken from the victim's body by Dr. Miller.  He will testify as to the concentration of drugs found in the victim's body and postmortem distribution. (Gov. Ex. 5: Axis lab report).   The government questioned Shanks and previously Harold Schueler, the chief forensic toxicologist from the Cuyahoga County Regional Forensic Science Laboratory in the Robert Johnson overdose trial before Judge Gaughan, about their ability to testify as to cause of death.  In both instances, their response was that they were not qualified to testify on that issue.  Somehow, Belloto, a pharmacist believes he can.

Belloto lacks the expertise to opine on the victim's cause of death.  He formed his opinion lacking expertise and proper methodology, thereby offering no probative value to the jury.  Furthermore, allowing the jury to hear such testimony poses a substantial risk of confusing and misleading the jury. See *Daubert*, 509 U.S. at 595; *Frazier*, 387 F.3d at 1263 (exclusion appropriate if probative value of evidence is substantially outweighed by potential to confuse or mislead jury).  "Simply put, expert testimony may be assigned talismanic significance in the eyes

of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." Id.

The United States therefore respectfully requests that this Court exclude any testimony Belloto would give as to cause of death.

        Respectfully submitted,

        DAVID A. SIERLEJA
        ACTING UNITED STATES ATTORNEY

By:   /s/ Vasile C. Katsaros
       Vasile C. Katsaros
       Robert F. Corts
       Assistant U.S. Attorneys
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3876
       (216) 522-8355 (facsimile)
       Vasile.katsaros@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on June 14, 2017, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by email.

                                /s/ Vasile C. Katsaros
                                Vasile C. Katsaros
                                Assistant U.S. Attorney